**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON**

**CIVIL ACTION NO. 2:13-cv-52(WOB-JGW)**

**KENNETH LALLEY, ET AL.**                                                      **PLAINTIFF**

**VS.**

**LISA PREWITT, ET AL.**                                                          **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This is a 42 U.S.C. § 1983 action brought by a Kentucky father, Kenneth Lalley, on behalf of himself and his minor children, G.L. and B.L., against employees of Kentucky's Cabinet for Health and Family Services ("Cabinet"). Plaintiffs allege violations of their Fourteenth Amendment procedural and substantive due process rights, as well as state-law claims for abuse of process and intentional infliction of emotional distress. The case is before the Court on the parties' cross-motions for summary judgment. (Docs. 42, 44.) The Court previously heard oral argument on these motions on October 6, 2014, after which it took them under advisement. The Court now issues the following Memorandum Opinion and Order.

**I. FACTS**

At oral argument on October 6, 2014, the parties agreed that the following facts are undisputed, although the legal significance of the facts is disputed.

**A.**    **C.L.'s Allegations and the Cabinet Referral**

On April 10, 2012, at 11:13 a.m., the Cabinet received a referral regarding the possible sexual abuse of a fifteen-year-old boy, C.L. C.L. is the minor son of Plaintiff Kenneth Lalley. The reporting

source, a therapist then treating C.L. in a Louisville hospital, stated that C.L. had reported that Lalley had been physically and sexually abusing him since the age of twelve. The alleged sexual abuse as initially described by the reporting source consisted of Lalley forcing C.L. to masturbate Lalley and to perform oral sex on Lalley over 100 times. Lalley allegedly carried out the abuse while his oldest child, M.L., was out of the house and by drugging his two youngest children, B.L. and G.L., in order to ensure that they slept through the abuse. (Doc. 42-5, DNA Reporting Form, at 1-2.)

When a Cabinet official spoke to the reporting source a second time, C.L. had corrected her version of the events, alleging that Lalley did not make C.L. perform oral sex on Lalley but that Lalley would wake C.L. in the middle of the night, blindfold him, and take him to another house where he would participate in oral sex and sexual intercourse with other adults. C.L. specifically alleged that one of the other adults was Boone County Family Court Judge Linda Bramlage. Based on a perceived conflict of interest in Boone County related to the allegations against Judge Bramlage, the Cabinet transferred the case to a Scott County social worker, Defendant Geri Purvis. (Doc. 42-6, Lalley CQA, at 6-7.)

In response to C.L.'s allegations, also on April 10, 2012, Cabinet employee Bill Coghill, an experienced sexual abuse investigator, interviewed C.L. at a Louisville hospital, where C.L. was housed at that time due to mental-health issues. During that interview, C.L. consistently reiterated the allegations that he previously had made against Lalley. Specifically, C.L. alleged that

2

Lalley had forced him to masturbate Lalley over 100 times and also that Lalley had forced him to participate in oral sex and sexual intercourse with Judge Bramlage and other adults over fifty times. C.L. gave a detailed description of the body of the woman he alleged was Judge Bramlage, including the position of her birth marks and her pubic hair color. In addition to the above allegations, C.L. alleged that he had once seen Lalley and Judge Bramlage naked together on the family sofa. He also alleged that M.L. witnessed the same incident. (*Id.* at 8, 10.)

Other than the allegations against Judge Bramlage, Coghill found C.L.'s story to be consistent with other cases he had worked. C.L. did not indicate that any of his siblings were physically or sexually abused by Lalley. (Doc. 42-8, Coghill Depo., at 8-10.) Coghill reported to Purvis on April 11 that C.L.'s story was internally consistent and believable. (Doc 42-6, Lalley CQA, at 8.)

B. **Purvis's April 10 Removal of Lalley's Children**

At approximately 9:30 p.m. on April 10, 2012, Defendant Purvis arrived at Lalley's home, accompanied by an officer of the Kentucky State Police. After Purvis provided Lalley with a business card, he allowed her to enter the home. Purvis requested permission to speak with Lalley's oldest child, M.L., and Lalley acquiesced. (Doc. 42-9, Lalley Depo., at 10-12). Purvis interviewed M.L. in an upstairs bedroom. M.L. reported that she was scared of Lalley, that Lalley was sometimes verbally abusive to her, and that Lalley had an alcohol problem. M.L. also corroborated C.L.'s allegations about witnessing

3

Lalley and Judge Bramlage naked together in their home. (Doc. 42-6, Lalley CQA, at 2-3.)

Based on C.L.'s allegations and her interview with M.L., Purvis believed that she could seek an emergency custody order ("ECO")[1] for each of the children in Lalley's home. (Doc. 42-10, Purvis Aff., at ¶ 2.) When Purvis returned downstairs, she informed Lalley that he could consent to the children's removal or that she could get a court order and the children would go to foster care. Lalley contacted his ex-mother-in-law, Lillian Mays, and she agreed to care for M.L., G.L., and B.L. temporarily. Purvis and the state policeman eventually transported M.L., G.L., and B.L. to Lillian Mays's residence. (Doc. 42-9, Lalley Depo., at 15, 21, 25.)

Before she departed with the children, Purvis presented Lalley with a prevention plan ("Plan"), a document authorizing the children's temporary removal from the home. The Plan stated that its objective was to "Keep Children Safe," and it imposed various obligations on Lalley. Lalley agreed that Lillian Mays would have "care, control, [and] supervision of [M.L., G.L., and B.L.]," that he would have "supervised visitation with the children," that he would not have "any conversations with the children about the [abuse] allegations or the case," that he would "cooperate with DCBS[2] and law enforcement," and that he would contact Purvis with any concerns or questions. The Plan

---

1. An emergency custody order is a judicial determination approving the removal of a child when that removal is in the child's best interests. It must be issued by a court and may be sought ex parte. *See* Ky. Rev. Stat. § 620.060.

2. DCBS is an abbreviation of Department for Community Based Services, which is an agency of the Cabinet.

4

bears both Lalley's and Purvis's signatures, dated April 10, 2012. (Doc. 42-11, Prevention Plan.)

On April 12, 2012, at 3:24 p.m., Lalley's attorney, John Berger, sent an e-mail to Purvis. In that e-mail, Berger unambiguously indicated that Lalley rescinded his consent to the Plan: "Based upon the apparent unauthorized removal of the Lalley children from his residence, Mr. Lalley rescinds his 'agreement' to allow his children to remain in the care of . . . Lillian Mays." (Doc. 44-14, E-mail from Pratt to Prewitt and Purvis, at 3.) The Cabinet thus decided to seek an ECO for each child removed from Lalley's home on April 10. (Doc. 44-10, Purvis Aff., at ¶¶ 3-5.)

C. **Prewitt's April 12 Procurement of the ECOs**

Due to the allegations C.L. had made against Judge Bramlage and on the advice of counsel, Defendant Lisa Prewitt contacted Judge Gregory Bartlett, the Chief Regional Circuit Judge for Northern Kentucky, several times on April 11 and April 12 to inform him of the situation and consult with him as to the best way for the Cabinet to proceed. Judge Bartlett instructed Prewitt to bring the draft ECO petitions to his chambers for review. Purvis prepared the draft petitions, which "stated that [they] were filed in Kenton Court due to a 'believed conflict of interest in Boone Family Court.'" (Doc. 42-12, Prewitt Aff., at ¶¶ 7-9.)

The Cabinet included the above statement "to explain why [they] were] not asking [Judge] Bramlage to sign the ECOs, even though the children resided in her jurisdiction." Prewitt sent the draft

5

petitions to Judge Bartlett, who later informed her that she needed to go through Judge Bramlage to obtain the ECOs. (*Id.* at ¶¶ 10-12.)

Prewitt subsequently called Judge Bramlage on the judge's cell phone and informed the judge that she had ECOs for the Lalley children that required the judge's signature. Before she presented the ECO petitions to Judge Bramlage, Prewitt removed the reference to the conflict of interest in Boone County. (*Id.* at ¶ 13.) Prewitt also signed the affidavits filed along with the ECO petitions even though Purvis had completed the affidavits, because Purvis was ninety minutes away from Boone County. (Doc. 42-3, Prewitt Depo., at 52.) When Judge Bramlage arrived, Prewitt presented her with the paperwork. Prewitt did not mention the allegations C.L. had made against the judge or that the Cabinet had referred the allegations against the judge to the Kentucky State Police. Judge Bramlage signed the petitions on April 12, 2012. (Doc. 42-16, Bramlage Depo., at 14-15.) The record does not reflect at what time on April 12 Judge Bramlage signed the ECOs.

D. **Family Court Proceedings and Purvis's Substantiation**

The parties then appeared at a Temporary Removal Hearing in Boone County Family Court on the following day, April 13, 2012. Judge Bramlage had left to take a vacation on the evening of April 12, so visiting Judge Foellger presided. Lalley's attorney, Berger, informed Judge Foellger of the nature of C.L.'s allegations against Judge Bramlage. With full knowledge of all the allegations, Judge Foellger found that there was probable cause to believe that all four children

were dependent, neglected, or abused. (Doc. 42-20, Temporary Custody Orders, at 2, 4, 6, 10, 14.)

At a hearing on May 11, 2012, Judge Foellger ordered the children's Guardian ad Litem to interview M.L., G.L., and B.L. If the children did not report allegations of abuse or neglect, then Judge Foellger planned to restore Lalley's right to full custody. (DE 45, DVD.) Following the Guardian ad Litem's interviews, the state court restored Lalley's parental rights for all of his children save C.L. (Doc. 44-21, Family Court Orders, at 1-3.)

Based on the information collected over the course of her investigation, Purvis concluded that she had probable cause to believe that abuse and neglect occurred, and she accordingly "substantiated"[3] Lalley on May 25, 2012, for neglecting all four children and for sexually abusing C.L. (Doc. 42-4, Purvis Depo., at 94; Doc. 42-6, Lalley CQA, at 18.) Purvis's supervisor approved the substantiation. (Doc. 48-4, Second Purvis Aff., at ¶ 7.) Purvis then sent Lalley a Substantiated Investigation Notification Letter ("SINL") including her findings on June 21, 2012. (Doc. 44-22, SINL, at 1.)

Purvis's finding of substantiation was later amended, pursuant to proper procedure, on two occasions to conform to the Family Court proceedings. On July 13, 2012, the Commonwealth dropped the sexual abuse charge but decided to proceed with the dependency and neglect charges based on Lalley's alleged alcohol problem. At this time,

---

3. "Substantiated" refers to an entry that a social worker makes in the Cabinet's computer system indicating that the social worker has probable cause to believe that allegations of dependency, neglect, or abuse occurred. (DE 54, Purvis Depo., at 93-94.)

7

Purvis's finding related to sexual abuse was changed to unsubstantiated in the Cabinet's records. On August 14, 2012, the Commonwealth dropped the neglect charge, and Purvis's related finding likewise was changed. (DE 45, DVD.)

The state-court proceedings concluded when the parties made their final appearance before Judge Foellger on November 13, 2012. At that hearing, the parties informally adjusted the case. In accordance with the parties' agreement, Judge Foellger found that C.L., G.L., and B.L. were dependent.[4] (Doc. 42-29, Docket Sheets, at 1-3.) The state court entered the informal adjustment on November 28, 2012. (Doc. 42-30, Order & Docket Sheets, at 1-4.)

## II. PROCEDURAL HISTORY

On April 9, 2013, Plaintiffs filed this lawsuit. The seven-count complaint against Defendants Prewitt and Purvis asserts multiple claims. (Doc. 1.) Count I alleges that Prewitt and Purvis violated Lalley's procedural and substantive due process rights when Purvis removed Lalley's children from his home on April 10, 2012. (*Id.* at ¶¶ 40-44.) Count II alleges that Prewitt and Purvis violated Lalley's procedural and substantive due process rights when Prewitt procured the ECOs on April 12, 2012. (*Id.* at ¶¶ 45-49.) Count III alleges that Purvis violated Lalley's procedural and substantive due process rights when she substantiated him for sexually abusing C.L. (*Id.* at ¶¶ 50-55.) Count IV alleges that Prewitt and Purvis violated Lalley's

---

    4. On October 23, 2012, Judge Foellger had dismissed M.L. from the case without prejudice because she had reached the age of eighteen. (Doc. 42-28, Orders, at 1.)

8

substantive due process right in his good name, reputation, honor, and integrity when Purvis's substantiation caused Lalley's name to be placed on the Child Abuse and Neglect ("CAN") registry. (*Id.* at ¶¶ 56-61.) Count V alleges a state-law claim for abuse of process against Prewitt and Purvis, alleging that they removed Lalley's children from his custody without an ECO. (*Id.* at ¶¶ 62-66.) Count VI alleges a state-law claim for intentional infliction of emotional distress ("IIED") against Purvis, alleging that she used her position intentionally to label Lalley as a child abuser. (*Id.* at ¶¶ 67-70.) Finally, Count VII of the complaint alleges that Prewitt and Purvis violated the procedural and substantive due process rights of G.L. and B.L. when Purvis removed them from their father's home on April 10, 2012. (*Id.* at ¶¶ 71-76.)

On June 24, 2014, Defendants moved for summary judgment on all the claims contained in Plaintiffs' seven-count complaint. (Doc. 42.) Plaintiffs in turn filed a motion for partial summary judgment on June 27, 2014, seeking judgment as a matter of law on all of the federal claims in their complaint. (Doc. 44.)

### III. ANALYSIS

#### A. <u>Federal Due Process Claims</u>

Plaintiffs pled multiple violations of both their procedural and substantive due process rights, but their summary judgment briefing does not develop separate arguments on procedural and substantive due process for those claims. While relying on substantive due process to establish the rights at issue, Plaintiffs actually assert claims for procedural due process, except for Count IV.

9

### 1. Purvis did not violate Lalley's procedural due process rights by removing the children on the basis of his consent (Count I).

Plaintiffs' briefing makes three arguments in support of liability on Count I. First, Plaintiffs argue that Defendant Purvis denied Lalley procedural due process when Purvis removed his children without a court order and without Lalley's valid consent. Plaintiffs next argue that Purvis is not entitled to absolute immunity. Finally, Plaintiffs argue that Purvis is not entitled to qualified immunity.

Plaintiffs argue that Purvis violated Lalley's rights during the April 10 removal because due process requires that parents receive notice prior to the removal of a child and a full opportunity to present evidence and witnesses at a hearing. *See Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 724 F.3d 687, 700 (6th Cir. 2013). However, the plaintiff in *Kovacic* did not consent to the removal. Moreover, the Court expressly recognized that her consent would have been a complete defense. *Id.* at 695.

Furthermore, the Sixth Circuit's decision in *Smith v. Williams-Ash*, 520 F.3d 596 (6th Cir. 2008), explicitly holds "that when a parent voluntarily consents to a safety plan, 'no hearing of any kind is necessary; hearings are required for deprivations taken over objection, not for steps authorized by consent.'" *Id.* at 600. The Court also held that the consent was valid in spite of a threat of immediate removal of the children into foster care. Lalley's signature on the Plan shows that he did not object to the removal on the night of April 10, and the Court therefore holds that Purvis did

not violate Lalley's procedural due process rights during the April 10 removal.

Plaintiffs attempt to distinguish *Williams-Ash* by relying on an older, unpublished Sixth Circuit decision, *Farley v. Farley*, 225 F.3d 658 (6th Cir. 2000) (Table). The *Farley* panel held that the mother's procedural due process rights were violated when "her consent . . . [to a prevention plan] was not voluntary during the entire time period involved." *Id.* at *4. Plaintiffs argue that Lalley rescinded his consent to the Plan on April 11, 2012, before the Cabinet obtained the ECOs, but this assertion is contradicted by the record. Lalley's attorney sent notice to the Cabinet rescinding Lalley's consent on April 12, 2012, at 3:24 p.m., the same day that Judge Bramlage signed the ECOs.

The evidence on this issue, interpreted most favorably to the plaintiffs, indicates that upon receipt late in the afternoon of April 12, Prewitt immediately procured the ECOS and requested a prompt judicial hearing thereon. This hearing was held the next day. These efforts satisfy the requirement of providing procedural due process, in light of the serious allegations against Lalley. Kentucky Revised Statutes section 620.060 allows a social worker to obtain an ECO ex parte if followed by a prompt judicial hearing.

However, if Lalley's rights were violated, the Court holds that Purvis would be entitled to at least qualified immunity in this unusual fact situation.

### 2. Prewitt is entitled to absolute immunity for the actions she took in order to obtain the ECOs (Count II).

Plaintiffs' briefing makes three arguments in support of liability on Count II. First, Plaintiffs argue that Defendant Prewitt denied Lalley due process when she intentionally withheld material information from Judge Bramlage in order to obtain the ECOs. Plaintiffs next argue that Prewitt is not entitled to absolute immunity under *Holloway v. Brush*, 220 F.3d 767 (6th Cir. 2000) (en banc), due to her usurpation of the judicial process. Plaintiffs finally argue that Prewitt is not entitled to qualified immunity.

In *Holloway*, the plaintiff sued the social worker for failing to notify the court that the mother wished to assert her parental rights, telling the mother than her parental rights had been terminated when they had not, and withholding information that would have allowed the mother to raise her rights before the court terminated them. *Id.* at 776. The Sixth Circuit described the basis of the suit as the social worker's "*out-of-court* actions" and denied immunity on that basis. *Id.*

Prewitt's actions are thus distinguishable from the actions of the social worker in *Holloway*, as Prewitt did nothing that prevented Lalley from asserting his parental rights. The allegations concerning Judge Bramlage were unnecessary to establish the merits of the ECO petitions. Furthermore, the state court was informed of the omission the next day, whereas in *Holloway* the plaintiff's very right to appear was denied for several months.

Rather, the Court holds that Prewitt's actions fall within the scope of the absolute immunity for social workers established by the *Holloway* court: "[S]ocial workers are absolutely immune only when they are acting in their capacity as *legal advocates* -- initiating court actions or testifying under oath . . . ." *Id.* at 775. Prewitt's submission of the ECOs to Judge Bramlage both initiated a court proceeding -- the temporary removal hearing before Judge Foellger on April 13, 2012 -- and involved testifying under oath by signing an affidavit.

However, if Lalley's rights were violated, the Court holds that Prewitt would be entitled to at least qualified immunity in this unusual fact situation.

### 3. Purvis did not violate Lalley's procedural due process rights when she substantiated him for sexual abuse (Count III).

Plaintiffs' briefing makes three arguments in support of liability on Count III. First, Plaintiffs argue that Defendant Purvis denied Lalley procedural due process when Purvis falsified information in order to substantiate Lalley for sexual abuse. Plaintiffs next argue that Purvis is not entitled to absolute immunity. Finally, Plaintiffs argue that Purvis is not entitled to qualified immunity.

Plaintiffs' arguments in support of liability are without merit. The contention that Purvis intentionally made unfounded statements in her substantiation letter is not borne out by the record. The three statements that Plaintiffs complain of are as follows: (1) the children were at risk of harm due to alcohol abuse; (2) C.L.'s allegations of sexual abuse were substantiated; and (3) the other

13

children were at risk of neglect due to the substantiated sexual abuse allegation against Lalley.

Judge Foellger found probable cause that the allegations of sexual abuse and alcohol abuse were true at the initial state-court proceeding, and probable cause is the evidentiary standard Purvis needed to meet in order to make the substantiation.

The Court therefore holds that Purvis did not violate Lalley's procedural due process rights by substantiating him for sexual abuse. However, if Lalley's rights were violated, the Court holds that Purvis would be entitled to at least qualified immunity.

### 4. Purvis did not violate Lalley's substantive due process rights when she substantiated him for sexual abuse (Count IV).

Plaintiffs' briefing makes three arguments in favor of liability on Count IV. First, Plaintiffs argue that Purvis's substantiation of Lalley for abuse and his placement on the CAN registry without a thorough investigation violated his substantive due process right to protection of his good name, honor, and reputation. *See Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989). Plaintiffs next argue that Purvis is not entitled to absolute immunity. Plaintiffs finally argue that Purvis is not entitled to qualified immunity.

There is no evidence in the record that supports Plaintiffs' assertion that Lalley's name was placed on the so-called CAN registry of abusers due to Purvis's substantiation such that his good name could be harmed. Despite completing discovery in this matter, Plaintiffs have not provided the Court with any evidence that a CAN registry even exists in Kentucky. *See* Fed. R. Civ. P. 56(c)(1).

14

Uncontroverted testimony from the Cabinet shows that the information is not public; in order to have a CAN check performed, qualified individuals may make a formal request of the Cabinet, and Cabinet employees in Frankfort run a check of their system and respond to the request. (Doc. 54-4, Purvis Depo., at 96-97; Doc. 54-7, Prewitt Depo., at 73-75.) The Court therefore holds that Purvis did not violate Lalley's substantive due process rights by substantiating him for sexual abuse.

However, if Lalley's rights were violated, the Court holds that Purvis would be entitled to at least qualified immunity.

### 5. Purvis did not violate the children's procedural due process rights by removing them on the basis of Lalley's consent (Count VII).

Plaintiffs' arguments in support of liability on Count VII are identical to their arguments relating to Count I. The Court therefore holds that Purvis did not violate the procedural due process rights of G.L. and B.L. for the same reasons that Purvis did not violate Lalley's procedural due process rights.

In summary, the Court holds as a matter of law that Defendants did not take any actions that violated Plaintiffs' procedural or substantive due process rights. The Court accordingly grants Defendants' motion for summary judgment on Counts I-IV and VII.

### B. State-Law Claims

#### 1. Defendants are entitled to summary judgment on Plaintiffs' claim for abuse of process (Count V).

A Kentucky abuse-of-process claim "is comprised of the following two necessary elements: '(1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the

15

proceeding.'" *Garcia v. Whitaker*, 400 S.W.3d 270, 276 (Ky. 2013) (quoting *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky. 1998)). "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Sprint Commc'ns Co. v. Leggett*, 307 S.W.3d 109, 113 (Ky. 2010) (quoting *Flynn v. Songer*, 399 S.W.2d 491, 494 (Ky. 1966)).

Plaintiffs have failed to adduce any evidence or make a colorable argument that Defendants used the civil proceeding in order to coerce any collateral advantage from Lalley. The Court accordingly grants Defendants' motion for summary judgment on Count V.

### 2. Defendants are entitled to summary judgment on the Plaintiffs' claim for intentional infliction of emotional distress (Count VI).

A Kentucky IIED claim requires that (1) "the wrongdoer's conduct must be intentional or reckless"; (2) "the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality"; (3) "there must be a causal connection between the wrongdoer's conduct and the emotional distress"; and (4) "the emotional distress must be severe." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004) (quoting *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 3-4 (Ky. 1990)).

Under Kentucky law, "[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Id.* at 788-89 (quoting Restatement (Second) of Torts § 46(1) cmt. h (1965)).

16

The *Stringer* court elaborated on the nature of the conduct required of a defendant before liability for IIED may be imposed:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Id.* at 789 (quoting Restatement (Second) of Torts § 46(1) cmt. d.))

Plaintiffs have failed to adduce any evidence or make a colorable argument that Purvis's actions that would lead a member of the community to exclaim that her investigation was outrageous. The Court accordingly grants Defendants' motion for summary judgment on the IIED claim.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment and **DENIES** Plaintiffs' motion for summary judgment.

Therefore, having heard the parties and the Court being sufficiently advised,

**IT IS ORDERED** that:

(1) Plaintiffs' motion for summary judgment (Doc. 44) be, and is hereby, **DENIED;**

(2) Defendants' motion for summary judgment (Doc. 42) be, and is hereby, **GRANTED.**

(3) A separate judgment shall enter concurrently herewith.

This 14th day of October, 2014.



Signed By:
*William O. Bertelsman* WOB
United States District Judge